STATE OF MINNESOTA ex rel. HENRY W. CHILDS, Attorney General, v. DANIEL C. DARROW.[1]

| 65 419 |
| 107 Wis 669 |

July 7, 1896.

Nos. 10,148—(322).

**City of Moorhead—Ordinance—Approval by Mayor—Publication.**
Under the charter of the city of Moorhead, all ordinances, resolutions, and by-laws of its city council of a legislative nature must, before they take effect, be approved by the mayor (or passed over his disapproval by a two-thirds vote, taken by yeas and nays, of the members of the council present and voting), and published in the official paper of the city.

**Subdivision of Ward.**
The subdivision of the wards of the city is a legislative act.

[1] Reported in 67 N. W. 1012.

### Same—Resolution of City Council—Retroactive Effect.

A certain resolution of its city council, which was approved by the mayor, and published in the official paper, *held* to be sufficient to subdivide a ward as of the date of its passage, but not to have a retroactive effect, so as to validate a prior invalid attempt to subdivide it.

Action in the nature of quo warranto to oust respondent from the office of alderman of the Fourth ward of the city of Moorhead. Judgment of ouster.

*H. W. Childs*, Attorney General, *L. Von Bornstedt*, and *Ira B. Mills*, for relator.

*F. H. Peterson*, for respondent.

BUCK, J. The city of Moorhead is a municipal corporation organized under the provisions of Sp. Laws 1881, c. 28, and the several acts amendatory thereof. Prior to the time of the proceedings out of which this controversy arose, the city was divided into three wards, from each of which two aldermen were elected.

Section 3 of chapter 1 of the charter contains a provision which is as follows:

"That after the organization of said city the council may from time to time make such re-division of the city into wards as may be required by the public interests; but no ward shall be created that shall contain less than one hundred legal voters."

The charter contains no other authority for the division of wards. Part of section 2 of chapter 3 of the charter reads as follows:

"All ordinances and resolutions shall before they take effect be presented to the mayor, and if he approve thereof he shall sign the same; and such as he shall not approve he shall return to the city council with his objections thereto, by depositing the same with the city recorder to be by him presented to the city council at their first meeting thereafter; and upon the return of any ordinance or resolution by the mayor, the same vote by which the same was passed shall be reconsidered, and if, after such reconsideration, the city council shall pass the same by a two-thirds vote of those present and voting, it shall have the same effect as if approved by the mayor and in such case the vote shall be by ayes and noes, which shall be entered in the record by the city recorder. If an ordinance or resolution shall not be returned by the mayor within five days after it shall have been presented to him, the same shall have the same effect as if approved by him."

Section 18 of chapter 3 of said charter provides that

"The city council shall designate a newspaper printed in the city, in which shall be published all ordinances and other proceedings, and matters required to be published in a public newspaper, the publisher of which shall be termed the city printer."

Section 1 of chapter 4 provides that

"The mayor and aldermen shall constitute the city council and the style of all ordinances shall be: 'The council of the city of Moorhead do ordain.'"

Section 5 of chapter 4 of the charter provides that

"All ordinances, regulations, resolutions and by-laws shall be passed by an affirmative vote of a majority of the members of the city council present, by ayes and noes, and be published in the official paper before same shall be in force."

At the time of the proceeding by the city council hereinafter referred to, there was a duly-elected city printer, and an officially designated newspaper, in the city of Moorhead. On January 6, 1896, at a regular meeting of the city council, one of the aldermen offered a resolution for the division of the Second ward, and that a committee of three from the council or citizens of the ward be appointed to make report to the council on the first Monday in February, 1896, as to the proper division and boundary of the said ward. This resolution does not appear to have been acted upon by the city council, but it appears from stipulation of the parties that the committee refered to in the resolution was appointed by the mayor, and it made a report, which is as follows:

"City Hall, Feb. 3rd, 1896.

"To the Hon. Mayor and City Council:

"Gentlemen: Your committee, appointed at the last monthly meeting of the city council, to report on the division of the Second ward of said city, respectfully report that we have made a thorough examination and find that it is in accordance with the wishes of the taxpayers of said ward to have the same divided, and we would respectfully recommend that said division be made, commencing at a point in the center of N. P. R. R. and Fifth street, running south on said Fifth St. to the center of Garroway St.; thence east to a point on the division line between block 7 of White's Second addition and block 4 of Briggs & Elder's addition; thence south on that line to South street; thence south through Fifth street to the city limits. And we further recommend that the territory west of the above-de-

scribed land be known as the Second Ward of the City of Moorhead, and the territory on the east of the same line be known as the Fourth Ward of the City of Moorhead.

"[Signed]                                            Ole Martinson.
                                                    "Warren Onan.
                                                    "J. W. Edling.

"Adopted Feb. 3rd, 1896."

These proceedings are all that appear from the records of the city council in regard to the creation of any new ward in said city, or any attempt thereat, prior to May 4, 1896. The proceedings above referred to were never presented to the mayor of the city for his approval, and he never affixed his signature to the same, or formally approved them, although he was present at the meeting when said proceedings were taken, and, as the presiding officer, took part in such proceedings.

Conceding that at and during all the time of these proceedings there was an officially designated newspaper published and printed in the city of Moorhead, yet it must also be conceded that no resolution, ordinance, regulation, or by-law in regard to the redivision of the Second ward of said city was ever presented to or approved by the mayor, and therefore the same could not possibly have been published, so approved, in the officially designated paper, although the foregoing proceedings were published in such newspaper, and it is claimed by the respondent that such publication was sufficient, if any were necessary at all. Assuming, without deciding, that the parol evidence as to the proceedings of the city council at the time when the report of the committee was under consideration was admissible, it is insufficient to establish the fact that the ayes and noes were taken upon its adoption, and, as there is no record evidence to this effect, we must find that such was not the fact.

On March 17, 1896, there was an election held in the city of Moorhead for the election of city officers, including the election of aldermen; and the electors of said city residing in that portion designated in the report of the committee as the "Fourth Ward" elected as one of the aldermen for said ward for the term of one year this respondent, Daniel C. Darrow, who qualified in the manner provided by law, and ever since has been acting as such alderman in the proceedings in the city council of the city of Moorhead upon matters coming before said council for its action, claiming the lawful right

to represent said Fourth ward, and to hold and exercise the office of alderman from said ward, by virtue of said election.

Subsequent to the time of the foregoing proceedings, and on May 4, 1896, at a regular meeting of the city council, a resolution was passed, by a unanimous vote, whereby the council sought to ratify the proceedings of the city council of January 6, 1896, and February 3, 1896, in regard to the division of the Second ward, and the action of the mayor in appointing said committee. A part of said resolution is as follows:

"Now, therefore, be it resolved that all of said proceedings as above stated be, and the same hereby are, ratified and confirmed, and that said Fourth ward be in all things recognized as existing from the time of the adoption of said report and the declaration of the establishment of said Fourth ward, on the 3d day of February, 1896. Be it further resolved that this resolution be spread upon the minutes of this council, and published once in the official paper of the city of Moorhead.

"Approved May 4th, 1896.

"Sam'l Frazier, Mayor."

Which resolution was on the same date duly approved by the mayor, and duly published, by order of said council, in the official paper of the city, on May 8, 1896. This resolution was passed by the unanimous vote of all the aldermen, upon a call for ayes and noes.

Thus two questions are presented for our consideration, viz. the legal effect of the proceedings prior to the election of the respondent, involving the question of the validity of the election of respondent as alderman from the Fourth ward, and the effect of the proceedings of May 4, 1896, regarding the division of the Second ward into two wards, one of which was designated as the "Fourth Ward."

The power of a municipal corporation to pass ordinances, resolutions, by-laws, and make regulations is derivative. The primary jurisdiction, in matters of a legislative nature, rests with the legislature itself, which, however, it may confer on a municipal corporation, so far as may be necessary to carry out the purposes for which it is formed, although such corporation has no power to pass general laws.

The charter of the city of Moorhead, authorizing a subdivision from time to time of the wards of said city, is one permitting the exercise of a legislative act. Sower v. City of Philadelphia, 35 Pa. St. 231. This act should be done by an ordinance or resolution. In such case

either must be passed by an affirmative vote of a majority of the city council, upon a call of the ayes and noes, then presented to the mayor, and, if he approve, then by due publication in the official newspaper of the city. A proceeding which redivides a ward of a city is one of great importance to the people residing therein, and their rights should not be affected without due consideration, and notice by publication, as required by the charter. The report of the committee which was adopted by the council was neither an ordinance nor resolution, and did not give that information to the people of the attempted redivision to which they were entitled under the law.

While the mayor is a member of the city council, by the terms of the charter, and is therefore authorized to take part in its proceedings, yet when ordinances and resolutions are passed a further duty devolves upon him, not as a member of the city council, but as an independent, co-ordinate branch of the city government, and he is given five days' time to examine them, and, if necessary, disapprove them, if there has been hasty and ill-advised legislation or proceedings affecting the rights and interests of the people. Frequently the existence of this power, and occasionally its exercise, is of great benefit, and serves to create respect and due regard for a co-ordinate authority. For a city council to utterly ignore the executive branch of the city government, and seek to legislate upon governmental matters by a proceeding in substance a resolution or ordinance, and thereby claim that such proceeding need not have the mayor's approval, or be duly published in the official paper of the city, is a mere evasion of the law. We do not, of course, refer to a mere rule of practice which a council might adopt; but the substantial purpose of legislative proceedings should not be defeated by giving to ordinances or resolutions a form of motions or reports.

Restriction upon legislative power is sometimes unpleasant for those who seek to exercise it, but it is nevertheless a wise provision, and sanctioned by the experience of ages, not merely because a city council may sometimes be governed by improper motives, but because its members may often be mistaken, and the people are entitled to the judgment of their executive officer thereon. If the city council could pass the act in controversy, and make it effective, without the approval of the mayor, we do not see why they could not pass a hundred others of a similar nature, affecting the interests of the people, and

the charter authorizing ordinances and resolutions would be a complete nullity.

We hold, therefore, that the report which was adopted did not have the effect of an ordinance or resolution, as it was not presented to or approved by the mayor, and was not published in the official paper of the city of Moorhead; and the said Second ward was not thereby redivided, and the Fourth ward not duly established.

As to the effect of the proceedings of the city council of May 4 but little need be said. At a regular meeting of the council upon that day, upon a call of ayes and noes, by unanimous vote of all the aldermen voting, a resolution was passed redividing the Second ward, and forming therefrom the Fourth ward, of said city, which resolution was presented to the mayor, approved and signed by him, and duly published in the official paper of the city of Moorhead. We are of the opinion that this was a sufficient compliance with the law, and that the Fourth ward of said city was thereby established as of that date, but that the resolution could not have any retroactive effect.

We are of the opinion that the respondent is holding the office of alderman for the Fourth ward in the city of Moorhead, in this state, contrary to law; and it is therefore adjudged that the said respondent, Daniel C. Darrow, is guilty of unlawfully holding and exercising the office of alderman for the Fourth ward in the city of Moorhead, in this state. And it is further ordered and adjudged that said Daniel C. Darrow be ousted and excluded from said office of alderman, and that judgment be entered accordingly.